UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TOM C. JEW, et al.,<br><br>　　　　Defendants. | Case No.  20-cv-08457-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 18 |

Defendants Tom C. Jew and Diane H. Nakagawa Jew (collectively "Defendants") move to dismiss Plaintiff Scott Johnson's First Amended Complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Having considered the Parties' papers, the Court **DENIES** Defendants' motion to dismiss for lack of subject-matter jurisdiction.[1]

**I.　BACKGROUND**

　**A.　Factual Background**

Plaintiff is a level C-5 quadriplegic. First Am. Compl. for Damages and Inj. Relief ("FAC"), Dkt. No. 16 ¶ 1. He cannot walk, has significant manual dexterity impairments, uses a wheelchair, and has a specially equipped van. *Id*. Defendants own and operate a general dentistry business ("General Dentistry") located at 1394 Franklin St., Santa Clara, California. *Id*. ¶ 2.

Plaintiff visited General Dentistry on or about September 29, 2020 "with the intention to avail himself of the services, largely motivated to determine if the defendants comply with the

---

[1] The Court took this motion under submission without oral argument pursuant to Civil Local Rule 7-1(b).

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1

1  disability access laws." *Id*. ¶ 7.  Plaintiff alleges that when he visited General Dentistry, he
2  personally encountered physical barriers relating to and impacting his disability that violate the
3  Americans with Disabilities Act of 1990 ("ADA") and deny him full and equal access to the
4  facilities.  FAC ¶¶ 16-17.  These alleged barriers include inaccessible parking stalls and
5  inaccessible door hardware.  *Id*. ¶¶ 9-15.  Therefore, Plaintiff alleges violations of the ADA, 42
6  U.S.C. § 12101, et seq., and California's Unruh Civil Rights Act, Cal. Civ. Code § 51-53 ("Unruh
7  Act") which provides that a violation of the ADA is a violation of the Unruh Act.  *Id*. ¶ 34.
8        Additionally, Plaintiff notes that he is in Santa Clara on a "constant and regular basis and
9  will continue to be so going into the foreseeable future." *Id*. ¶ 23.  Plaintiff acknowledges that he
10  must return and patronize the business as a customer in order to enjoy standing to sue (*id*. ¶ 24),
11  and he alleges that he "will return to the General Dentistry to use its services and assess the
12  business for compliance but is currently deterred from doing so until it is represented to him that
13  the General Dentistry and its facilities are accessible and that they have abandoned their
14  discriminatory and retaliatory policies." *Id*.

### B. Procedural History

Plaintiff initiated this action on November 26, 2020.  *See* Complaint for Damages and Injunctive Relief ("Compl."), Dkt. No. 1.  Defendants filed a motion to dismiss the Complaint on March 4, 2021.  Dkt. No. 15.  In lieu of opposing the motion to dismiss, Plaintiff filed an Amended Complaint on March 18, 2021.  *See* FAC.  In the FAC, Plaintiff adds an additional allegation that Defendant Dr. Jew has retaliated against him in response to his filing of this ADA lawsuit by refusing to render service to the Plaintiff in the future—a violation of Section 12203(a) of the ADA.  *Id*. ¶¶ 31-32.

Defendants filed the instant motion to dismiss on April 1, 2021, which was accompanied by a request for judicial notice in support of the motion.  *See* Mot. to Dismiss, Dkt. No. 18; Request for Judicial Notice ("RJN"), Dkt. No. 18-2.  Plaintiff submitted an opposition to the motion on April 14, 2021.  *See* Plf's. Opp'n to the Mot. to Dismiss the FAC ("Opp'n"), Dkt. No.

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

2

19. Defendants filed a reply on April 22, 2021. *See* Reply in Supp. of Defs.' Mot. to Dismiss. ("Reply iso Mot."), Dkt. No. 20.

## II.  LEGAL STANDARD

To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). A defendant may either challenge jurisdiction "factually" by presenting extrinsic evidence (affidavits, etc.) demonstrating the lack of jurisdiction based on the facts of the case, or "facially" by arguing the complaint "on its face" lacks jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving a factual jurisdictional attack, the court may review extrinsic evidence and need not presume the truthfulness of the plaintiff's allegations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

Conversely, "[i]n a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. During a facial attack, the court examines the complaint as a whole to determine if the plaintiff has "alleged a proper basis of jurisdiction." *Watson v. Chessman*, 362 F. Supp. 2d 1190, 1194 (S.D. Cal. 2005). When evaluating a facial attack, the court assumes the complaint's allegations truth and draws all reasonable inferences in the plaintiff's favor. *Wolfe*, 392 F.3d at 362. The court may not consider evidence outside the pleadings when deciding a facial attack. *See, e.g., MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2011 WL 1457424, at *1 (E.D. Cal. Apr. 14, 2011).

However, jurisdictional dismissals in federal-question jurisdiction cases are "exceptional."

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

3

*Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983). In *Bell v. Hood*, the Supreme Court determined that jurisdictional dismissals are warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." 327 U.S. 678, 682-83 (1946).

## III. DISCUSSION

Defendants bring both a "factual" and "facial" challenge arguing that Plaintiff's FAC lacks jurisdiction. Mem. of P. & A. in Supp. of Mot. to Dismiss ("Mot."), Dkt. No. 18-1 at 3-11. Defendants' "factual" challenge is premised upon an accompanying declaration from Defendant Dr. Jew in which he attests that he will not take Plaintiff as a patient in the future, resulting in there being no imminent threat of future harm to Plaintiff. *See generally* Decl. of Tom C. Jew D.D.S. in Supp. of Mot. to Dismiss ("Decl. of Dr. Jew"), Dkt. No. 18-3.

### A. Request for Judicial Notice

Defendants request that this Court take judicial notice of six documents. RJN ¶¶ 1-6. Plaintiff does not dispute this request. Federal Rule of Evidence 201(b) allows a court to take judicial notice of a fact that is "not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Public records maintained on government websites are generally subject to judicial notice. *See, e.g., Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1075 n.3 (E.D. Cal. 2016) (collecting cases). Geographical information from Google Maps is also proper for judicial notice because it can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012).

Requests 1, 2, 5 and 6 pertain to public records maintained on government websites. RJN ¶¶ 1, 2, 5, 6. These requests are **GRANTED**. *See Nat'l Grange*, 182 F. Supp. 3d at 1075 n.3. Requests 3 and 4 relate to Google Maps navigation directions. RJN ¶¶ 3, 4. These requests are

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

4

also **GRANTED**. *See Perea-Rey*, 680 F.3d at 1182 n.1.

### B.     Article III Standing

The "Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (*en banc*) (quoting *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)). "[T]o establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [Plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Id*. (footnote omitted) (quoting *Fortyune v. Am. Multi–Cinema*, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)). A plaintiff can establish a threat of repeated injury in the future by showing "injury-in-fact coupled with an intent to return," or alternatively "deterrence from returning to the premises." *Id.* at 944.

#### 1.     Defendants' Factual Attack

Defendants' factual attack on the FAC argues that Plaintiff cannot show a real and immediate threat of repeated injury because Dr. Jew's decision not to take him as a patient means that Plaintiff will have no reason to return to the office and will not face the alleged barriers again. Defendants also factually attack Plaintiff's allegations that Dr. Jew is retaliating against him (in violation of the ADA) because Plaintiff brought this lawsuit. Dr. Jew alleges that his choice not to take Plaintiff as a patient in the future is not based on Plaintiff's disability or in retaliation for this lawsuit (Decl. of Dr. Jew ¶ 8), but is instead based on the breakdown of "trust and honesty [that] lie at the core of the doctor-patient relationship." *Id*. ¶ 9.

The Court finds both arguments unconvincing. First, Plaintiff alleges that he was denied equal access to General Dentistry's services because the ADA violations on the outside of the building (inaccessible parking stalls and inaccessible door hardware) prevented him from entering the building and availing himself of the business' services. If Plaintiff was denied access once without being personally treated by Dr. Jew, it is possible for Plaintiff to be exposed to repeated

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

5

injury without being personally treated by him in the future. For example, he may wish to visit the facility to inquire about the possibility of making an appointment, but would be unable to enter the building without correction of the alleged barriers.

Second, Section 12203(a) of the ADA states that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C.A § 12203(a). The U.S. Department of Justice Title III Assistance Manual provides an illustration of actionable retaliatory behavior under the ADA: "A restaurant may not refuse to serve a customer because he or she filed an ADA complaint against the restaurant or against another public accommodation." U.S. Dept. Of Justice, Civil Rights Division, the Americans with Disabilities Act: Title III Technical Assistance Manual § 4.4100 (1993).[2] Dr. Jew states in his declaration that "***The fact that we are adverse parties in a lawsuit*** has irreparably compromised any alleged hypothetical doctor-patient relationship with plaintiff. Therefore, based only upon the irreparable compromise of any such doctor patient-relationship, I would not be able to accept plaintiff as a patient in the future." Decl. of Dr. Jew ¶ 7 (emphasis added).

Dr. Jew attempts to draw a line in the sand by saying that it is only the breakdown of trust that resulted in his choice not to treat the Plaintiff in the future, and therefore his actions do not constitute retaliation. His statement indicates otherwise. Based on Dr. Jew's own explanation for his decision, but-for Plaintiff suing Defendants to bring their business into compliance with the ADA, Dr. Jew would have no reason to refuse to treat Plaintiff indefinitely without first meeting or speaking with him to determine whether potential for a doctor-patient relationship exists. Dr. Jew explains that he has terminated relationships with existing patients in the past for breakdowns of trust and cites this as evidence that this refusal is not discriminatory. *Id*. ¶ 10. But Dr. Jew cites no instances in which he has refused to treat a *potential* patient without meeting or speaking with

---

[2] Also available at: https://www.ada.gov/taman3.html.

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

6

1  them first.  Whether or not a business owner and their customer must maintain a relationship based
2  on trust, a business owner's choice not to serve a customer because they are adverse parties in a
3  lawsuit is exactly the type of behavior that section 12203(a) prohibits and aims to prevent.
4        Defendants also allege that, because an injunction is the only relief afforded to plaintiffs
5  under the ADA, granting relief under § 12203(a) would "require the court to order Dr. Jew to treat
6  plaintiff–an act which the court cannot do since there is no preexisting doctor-patient relationship
7  to enforce." Mot. at 6.  The Court acknowledges the tension between the rights of disabled
8  plaintiffs to have equal access to public accommodations and the rights of doctors who have the
9  right to choose their patients and have no duty to treat people that they have no previous doctor-
10 patient relationship with.  However, the Court does not accept the reasoning that granting
11 injunctive relief in this case necessarily means requiring Dr. Jew to treat Plaintiff.  Plaintiff's
12 prayer for relief requests damages under the Unruh Act, reasonable attorney's fees, and injunctive
13 relief in the form of Defendants being brought into compliance with the ADA and Unruh Act
14 (presumably through an order requiring Defendants to fix the alleged physical barriers on their
15 property).  FAC at 8.  Although Plaintiff asks for "any other equitable relief the Court finds
16 appropriate" (*id.*), he does not specifically request injunctive relief in the form of treatment by Dr.
17 Jew.
18        Although Plaintiff did not furnish any additional affidavits or evidence, the Declaration
19 introduced by Defendants is not sufficient for the Court to conclude that it lacks subject matter
20 jurisdiction over the case.  Accordingly, the Court finds that the Defendants' factual attacks on the
21 FAC fail, at this stage, to establish grounds for dismissal.

### 2. Defendants' Facial Attack

23 Defendants' facial attack contends that Plaintiff has not established that he will suffer
24 future injury because he neither (1) genuinely intends to return to General Dentistry; nor (2) is
25 truly deterred from visiting General Dentistry because he has never been Dr. Jew's patient.
26 Ninth Circuit precedent forecloses Defendants' argument.  Even at summary judgment—

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
7

where Plaintiff's burden of showing standing is greater than at the pleading stage—relatively "minimal allegations" support ADA standing. *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (per curiam) (reversing dismissal for lack of standing at summary judgment); see also *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (discussing plaintiff's greater burden of showing standing at summary judgment). Namely, "[a]llegations that a plaintiff [1] has visited a public accommodation on a prior occasion and [2] is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Wilson*, 563 F.3d at 980 (quoting *Doran*, 524 F.3d at 1041).

Here, Plaintiff makes allegations that the Ninth Circuit has held are sufficient. Plaintiff alleges that he visited General Dentistry "with the intention to avail himself of the services, largely motivated to determine if the defendants comply with the disability access laws." FAC ¶ 7. Plaintiff also alleges that he will return to General Dentistry but is "currently deterred from doing so until it has been represented to him that the General Dentistry and its facilities are accessible and that they have abandoned their discriminatory and retaliatory policies." *Id*. ¶ 24. Thus, Plaintiff has adequately pled an imminent ADA injury sufficient to support Article III standing.

Two Ninth Circuit ADA cases are instructive in this case. In *Doran*, plaintiff Jerry Doran sued a 7-Eleven store located in Anaheim, California about 550 miles from his home. 524 F.3d at 1038. Doran alleged that he would visit the store in the future because he "plan[ned] to visit Anaheim at least once a year on his annual trips to Disneyland." *Id*. at 1040. Despite Doran's distance from the store and the infrequency of his visits to Anaheim, the Ninth Circuit held that Doran had standing, thereby reversing the district court's summary judgment for 7-Eleven. *Id*. at 1049.

Plaintiff makes a more compelling case for standing than Doran did against 7-Eleven. Plaintiff resides 130 miles from General Dentistry—less than one-fourth the distance between Doran and the 7-Eleven store. *See* RJN, Exhibits C-D. Plaintiff also alleges that he "frequents this Santa Clara area for many reasons, including his ADA testing work." FAC ¶ 23. He states

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
8

that he is in the geographic area "on a constant and regular basis and will continue to be so going into the foreseeable future." *Id.* ¶ 23. Thus, Plaintiff resides closer to and more frequently visits the vicinity of the public accommodation that he is suing under the ADA than Doran did.

In *Civil Rights Educ. & Enf't. Ctr. v. Hosp. Properties Tr.*, plaintiffs sued several hotels for failing to provide wheelchair-accessible shuttle services. 867 F.3d 1093, 1097 (9th Cir. 2017) (describing named plaintiffs' lawsuits). The hotels argued that plaintiffs lacked standing because (1) "[plaintiffs] did not actually visit the hotels"; and (2) "[plaintiffs] are motivated to visit the hotels only by their desire to test them for ADA compliance." *Id*. at 1099. The Ninth Circuit disagreed. As to the hotels' first argument, the Ninth Circuit held that a plaintiff can show standing even if he has not visited a public accommodation before. A plaintiff need only allege that he "intend[s] to visit the relevant [accommodations], but ha[s] been deterred from doing so by the [accommodation]s' noncompliance with the ADA." *Id*. As for the hotels' second argument, the Ninth Circuit held that plaintiffs' "motivation for visiting the [accommodations] is irrelevant." *Id*. at 1101. A motivation to test ADA compliance can still support standing. *Id*.

Plaintiff's case for standing is stronger here too. Plaintiff visited General Dentistry and personally encountered barriers to his access. FAC ¶¶ 7, 16. Thus, compared to the plaintiffs in *Civil Rights Education*, Plaintiff has more personal knowledge of the alleged barriers to accessibility. Notably, his admitted partial motivation for visiting General Dentistry in order to assess their compliance with the ADA (FAC ¶ 7) is irrelevant. *See Civil Rights Educ. & Enf't Ctr.*, 867 F.3d at 1101.

Defendants' response to these Ninth Circuit precedents is unpersuasive. Defendants rely on two district court cases that found that the Plaintiff lacked standing to bring an ADA claim. *See* Mot. at 7-10 (relying on *Johnson v. Overlook at Blue Ravine, LLC*, No. 2:10-CV-02387-JAM, 2012 WL 2993890 (E.D. Cal. July 20, 2012) and *Johnson v. DTBA, LLC*, 424 F.Supp.3d 657 (N.D. Cal. 2019)). In both cases, the court ruled against Plaintiff after balancing four factors set forth by another district court: "(1) the proximity of defendant's business to plaintiff's residence,

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1    (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to

2    return, and (4) the plaintiff's frequency of travel near defendant." *Overlook at Blue Ravine*, 2012

3    WL 2993890, at *3 (*quoting Lema v. Comfort Inn, Merced*, 1:10-cv-00362-SMS, 2012 WL

4    1037467, at *5 (E.D. Cal. Mar. 27, 2012)); *DTBA, LLC*, 424 F. Supp. 3d at 663.

5          Here, Defendants argue that these factors show that Plaintiff lacks standing. In particular,

6    Defendants argue that Plaintiff lacks either the intent or concrete plans to return to General

7    Dentistry. The Court is unpersuaded for two reasons. First, the four-factor test in these cases is

8    not a controlling test for assessing Plaintiff's standing. In *Civil Rights Education*, the Ninth

9    Circuit (1) held that the second factor (past patronage) is unnecessary for standing; and (2) ignored

10   the first and fourth factors (proximity of business and frequency of travel). *See Civil Rights Educ.*

11   *& Enf't. Ctr.*, 867 F.3d at 1099 ("The Named Plaintiffs were not required to visit the hotels.").

12   The Ninth Circuit found standing based on the third factor (definitiveness of plaintiffs' plans to

13   return) alone. The *Civil Rights Education* plaintiffs merely needed to allege: (1) "that they intend

14   to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance

15   with the ADA"; and (2) "that they will visit the hotels when the non-compliance is cured." *Id*.

16   Similarly here, Plaintiff alleges that he "will return to the General Dentistry to use its services and

17   assess the business for compliance but is currently deterred from doing so until it is represented to

18   him that [ ] its facilities are accessible." *Id*. ¶ 24. Further, Plaintiff makes a stronger case than the

19   Plaintiffs in *Overlook at Blue Ravine* and *Civil Rights Education* because he has plead that he has

20   plans to be in the area on a "constant and regular basis and will continue to be so going into the

21   foreseeable future" due to his ADA testing work. *Id*. ¶ 23.

22         Second, although it seems implausible that Plaintiff plans to visit General Dentistry in

23   addition to the many other public accommodations that he has sued, controlling precedent compels

24   this Court to disregard this implausibility. In *D'Lil*, the Ninth Circuit reversed a district court's

25   finding that plaintiff Hollynn D'Lil lacked standing. *D'Lil v. Best W. Encina Lodge & Suites*, 538

26   F.3d 1031, 1039 (9th Cir. 2008). The district court had found—after briefing and an evidentiary

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT

hearing—that "D'Lil failed to provide evidence of her intent to return." *Id*. The district court further "not[ed] concerns about the credibility of D'Lil's professed desire to return in light of her involvement in [approximately sixty] prior ADA suits." *Id*. Over a dissent, the Ninth Circuit held that "because the district court focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina, we reject its purported adverse credibility determination." *Id*. at 1040. The Ninth Circuit explained that "[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Id*. (quoting *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007)).

Thus, the Court cannot "rel[y] on [Plaintiff]'s prior ADA suits to question the sincerity of h[is] intent to return to" General Dentistry to avail himself of its services. *Id*. The Court instead relies on whether Plaintiff has "identified specific reasons" for visiting the office and the area around it. *Id*. Here, Plaintiff has identified specific reasons at the pleading stage. *See, e.g.*, FAC ¶¶ 22-24 (describing tester status and reasons for returning to the Santa Clara area as well as General Dentistry). Accordingly, the Court holds that Plaintiff has Article III standing to bring his ADA claim at this point.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 16, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cv-08457-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

11